**INTERSTATE COMMERCE COMMIS-SION, Plaintiff, Appellee,**

v.

**BAY STATE TRANSPORTATION BRO-KERS et al., Defendants, Appellants.**

No. 78–1097.

United States Court of Appeals, First Circuit.

Argued May 2, 1978.

Decided June 27, 1978.

William R. Robison, Springfield, Mass., with whom Cooley, Shrair, Alpert & Labovitz, P. C., Springfield, Mass., was on brief, for defendants, appellants.

John F. Curley, Boston, Mass., with whom Dale R. Cohen, Washington, D.C., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The Interstate Commerce Commission filed a complaint in district court on November 23, 1977, seeking to enjoin the defendants from disobeying a subpoena duces tecum served on defendant John E. Jeserski, treasurer and manager of defendant Bay State Transportation Brokers. The district court ordered the injunction to issue on December 30, 1977, and denied a motion to stay pending appeal on March 7, 1978. This court thereupon stayed the injunction on March 24, 1978.

The Interstate Commerce Commission has been investigating Bay State at least since 1975 in an effort to determine whether it has been violating the terms of the Interstate Commerce Act governing motor carriers, 49 U.S.C. §§ 301–1022. Bay State claims to be the agent of Market Produce Lines, Inc., an allegedly exempt agricultural cooperative. According to Bay State, it arranges for freight to be shipped on the return trip of trucks belonging to Market Produce Lines which carry agricultural products from the West Coast to the East. The Commission has made numerous demands on Bay State to permit inspection of its records, especially documents concerning its relationship with Market Produce Lines. On October 5 and 6, 1977, counsel for Bay State apparently made available some of the requested documents to Commission investigators. Bay State contends it provided the investigators with all of what it considered transportation records in its possession and withheld only so-called financial records which it claims to be beyond the Commission's jurisdiction. The Commission responds that Bay State delivered only a

small sample of some of the transportation records sought by the Commission, and nothing else. After a hearing, the district court found that Bay State had failed to produce lawfully requested records in its possession and control and enjoined any further efforts to disobey the Commission's subpoena.

■ Bay State makes two arguments on this appeal. It first contends that the district court lacked jurisdiction to enter the injunction. According to Bay State, 49 U.S.C. § 322(b)(1), the statute permitting district courts to issue injunctions to enforce orders of the Commission, applies only to violations by motor carriers or brokers, and does not authorize an injunctive enforcing an order as to an agricultural cooperative or its agents.[1] Two answers can be made to this argument. First, there is

1. 49 U.S.C. § 322(b)(1) provides:

If any motor carrier or broker operates in violation of any provision of this chapter (except as to the reasonableness of rates, fares, or charges and the discriminatory character thereof), or any lawful rule, regulation, requirement, or order promulgated by the Commission, or any term or condition of any certificate or permit, the Commission or its duly authorized agent may apply for the enforcement thereof to the district court of the United States for any district where such motor carrier or broker operates. . . . The court shall have jurisdiction to enforce obedience to any such provision of this part, or of such rule, regulation, requirement, order, term, or condition by a writ of injunction or by other process, mandatory or otherwise, restraining such carrier or broker, his or its officers, agents, employees, and representatives, and such other person, or persons, acting in concert or participating with such carrier or broker, from further violation of such provision of this part, or of such rule, regulation, requirement, order, term, or condition and enjoining upon it or them obedience thereto. . . .

Section 304(a) provides:

(a) It shall be the duty of the Commission—

. . . . . .

(7) For purposes of the administration of the provisions of this chapter, to inquire into the management of the business of motor carriers and brokers, and into the management of the business of persons controlling, controlled by, or under common control with, motor carriers to the extent that the business of such persons is related to the management of the business of one or more motor carriers, and the Commission shall keep itself informed as to the manner and method in which the same are conducted, and may obtain from such carriers and persons such information as the Commission deems necessary to carry out the provisions of this chapter; . . . . .

In addition, section 320(g) provides specifically for obtaining information from agricultural cooperatives:

The Commission or its duly authorized special agents, accountants, or examiners shall, during normal business hours, have access to and authority, under its order, to inspect, examine, and copy any and all accounts, books, records, memorandums, correspondence, and other documents pertaining to motor vehicle transportations of a cooperative association or federation of cooperative associations which is required to give notice to the Commission pursuant to the provisions of section 303(b)(5) of this title: *Provided, however,* That the Commission shall have no authority to prescribe the form of any accounts, records, or memorandums to be maintained by a cooperative association or federation of cooperative associations.

The general exemption for agricultural cooperatives, 49 U.S.C. § 303(b), provides:

(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include . . . (5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved June 15, 1929, as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined, but any interstate transportation performed by such a cooperative association or federation of cooperative associations for nonmembers who are neither farmers, cooperative associations, nor federations thereof for compensation, except transportation otherwise exempt under this chapter, shall be limited to that which is incidental to its primary transportation operation[s] and necessary for its effective performance and shall in no event exceed 15 per centum of its total interstate transportation services in any fiscal year, measured in terms of tonnage: *Provided,* That, for the purposes hereof, notwithstanding any other provision of law, transportation performed for or on behalf of the United States or any agency or instrumentality thereof shall be deemed to be transportation performed for a nonmember; *Provided further,* That any such cooperative association or federation which performs interstate transportation for nonmembers who are neither farmers, cooperative associations, nor federations thereof, except transporta-

nothing in the record other than the assertions of Bay State to establish that the motor vehicles in question here fall within the agricultural cooperative exemption. Second, and more importantly, Bay State's reading of the law is incorrect. It is only reasonable to infer that when Congress amended 49 U.S.C. § 320 in 1968 to give the Commission the authority to inspect records of agricultural cooperatives, it intended that inspection orders directed to truckers claiming to come within the agricultural cooperative exemption be judicially enforceable in the same manner as orders addressed to others. A different construction would go a long way towards rendering the 1968 amendment ineffective. We agree with the Ninth Circuit that further amendment of 49 U.S.C. § 322(b) to include a specific reference to orders of this type was not necessary to accomplish a purpose so manifest. *ICC v. Big Valley Growers Co-op*, 493 F.2d 888 (9th Cir. 1974). *See also ICC v. Beehive State Agricultural Cooperative, Inc.*, 575 F.2d 802 (10th Cir. 1978).

■ Bay State also argues that the Commission cannot demand access to its financial data, as the Commission's jurisdiction extends only to enforcement of the cargo limitations contained in 49 U.S.C. § 303(b)(5).[2] According to Bay State, the Commission needs to know only how much of what kind of cargo it arranges to be carried and can have no legitimate interest in its profits, rates, or other financial arrangements. Similar arguments were raised in *FTC v. Swanson*, 560 F.2d 1 (1st Cir. 1977), where airline tour operators challenged a Federal Trade Commission subpoena on the ground that they were subject to the exclusive jurisdiction of the Civil Aeronautics Board. This court rejected that argument, ruling that "[a]n agency's investigations should not be bogged down by pre-

mature challenges to its regulatory jurisdiction." *Id.* at 2 (citing *FTC v. Crafts*, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943)). The subpoena here does not seek evidence that is "plainly incompetent or irrelevant to any lawful purpose" of the ICC, *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943). All the information sought, including financial data, is material to a proper Commission purpose: the Commission is empowered not just to determine whether Bay State is satisfying the cargo restriction of 49 U.S.C. § 303(b)(5), but to determine whether Bay State is in fact an agent of an exempt agricultural cooperative.

*The stay is vacated and the injunction affirmed.*

---

tion otherwise exempt under this chapter, shall notify the Commission of its intent to perform such transportation prior to the commencement thereof: *And provided further,* That in no event shall any such cooperative association or federation which is required hereunder to give notice to the Commission transport interstate for compensa-

tion in any fiscal year of such association or federation a quantity of property for non-members which, measured in terms of tonnage, exceeds the total quantity of property transported interstate for itself and its members in such fiscal year; . . . ..

**2.** *See note 1 supra.*